UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ACUSHNET COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | NO. 15-11524-WGY |
| ) | |
| ZIMVENTURES, LLC d/b/a 3 UP GOLF, ) | |
| DIXON GOLF, INC., KICK X GOLF ) | |
| CORPORATION d/b/a KICK X SPORTS, ) | |
| LIGHTNING GOLF, MONSTA GOLF LLC, ) | |
| RIFE GOLF, VAIL ROBERTS, LLC d/b/a/) | |
| I NEED THE BALL, VICE SPORTING ) | |
| GOODS GMBH d/b/a VICE GOLF, NEXEN ) | |
| CORPORATION d/b/a SAINTNINE, and ) | |
| ARIVA GOLF, ) | |
| ) | |
| Defendants. ) | |
| ) | |

YOUNG, D.J.                                    DECEMBER 23, 2015

### MEMORANDUM OF DECISION

## I.   INTRODUCTION

The plaintiff Acushnet Company ("Acushnet") brought this
suit against ten defendants for patent infringement.  Three of
these defendants, Nexen Corporation ("Nexen"), Dixon Golf, Inc.
("Dixon"), and Rife Golf ("Rife") (collectively, the "Moving
Defendants"), moved to dismiss the complaint for lack of
personal jurisdiction, arguing that they lack the minimum
contacts with Massachusetts required for this Court to
constitutionally assert jurisdiction.  This Court concludes that
Acushnet has met its burden of making a prima facie showing that

each of the Moving Defendants purposefully availed itself of the
privilege of doing business in Massachusetts, and that this
lawsuit arises out of the Defendants' contacts with the forum
state.  Moreover, the exercise of jurisdiction here would not
run afoul of the principle of fairness embodied in the Due
Process Clause of the Constitution.  Accordingly, each
Defendant's motion to dismiss is denied.

A.   **Facts Alleged**

Acushnet is an entity headquartered in Fairhaven,
Massachusetts, that invents, manufactures, and sells golf
equipment.  Compl. ¶¶ 1, 4, ECF No. 1.  Acushnet owns several
patents[1] concerning the aerodynamic design of the dimple patterns
on the outer casing of a golf ball.  Id. ¶¶ 19, 25, 26.
Acushnet alleges that each of the ten defendants infringed its
patents by selling infringing products to customers in
Massachusetts and soliciting business from Massachusetts
customers over the Internet.  Id. ¶ 15.

Nexen is a South Korean corporation with a principal place
of business in Gimhae City, Republic of Korea.  Id. ¶ 10.  Nexen
sells its allegedly infringing products under the trade name
"SaintNine."  Id.  Dixon is a corporation with a principal place

---

[1] U.S. Patents Nos. 6,923,736; 7,491,137; 7,226,369;
8,360,902; and 8,465,381.  Compl. ¶ 1.

[2]

of business in Tempe, Arizona.  Id. ¶ 3.  Dixon sells its allegedly infringing products under the brand name "Dixon Fire." Id. ¶ 34.  Rife is a business organization with a principal place of business in Bellevue, Washington.  Id. ¶ 7.  Rife sells its allegedly infringing products under the trade name "V Motion" or "Innovex V Motion."  Id.

**B.   Procedural History**

Acushnet initiated this lawsuit on April 6, 2015.  See Compl.  Nexen, Dixon, and Rife moved to dismiss the complaint for lack of personal jurisdiction.  Def. Nexen Corp.'s Mot. Dismiss Lack Personal Jurisdiction, ECF No. 50; Def. Dixon Golf, Inc.'s Mot. Dismiss Lack Personal Jurisdiction, ECF No. 54; Def. Rife Golf's Mot. Dismiss Lack Personal Jurisdiction, ECF No. 52.

Acushnet opposed each of the motions to dismiss and alternatively requested leave to conduct jurisdictional discovery.[2]  Pl.'s Opp'n Def. Nexen Corp.'s Mot. Dismiss Lack Personal Jurisdiction ("Pl.'s Opp'n re Nexen"), ECF No. 79; Pl.'s Opp'n Def. Dixon Golf, Inc.'s Mot. Dismiss Lack Personal Jurisdiction ("Pl.'s Opp'n re Dixon"), ECF No. 78; Pl.'s Opp'n

---

[2]  Acushnet previously contacted the Moving Defendants to request an opportunity to undertake jurisdictional discovery. Decl. Joshua C. Krumholz, Ex. 1, September 10, 2015 Email from Benjamin Stern to counsel for the Moving Defendants, ECF No. 82-1.  The Moving Defendants refused.  Decl. Joshua C. Krumholz, Ex. 7, September 18, 2015 Email from counsel for the Moving Defendants to Benjamin Stern, ECF No. 82-7.

Def. Rife Golf's Mot. Dismiss Lack Personal Jurisdiction ("Pl.'s Opp'n re Rife"), ECF No. 80.

The Moving Defendants jointly filed a reply on October 22, 2015.  Def. Dixon, Rife and Nexen's Joint Reply Supp. Respective Mots. Dismiss. ("Joint Reply"), ECF No. 101.  The Court held a hearing on the motions to dismiss on October 30, 2015, and took them under advisement.  Elec. Clerk's Notes, Oct. 30, 2014, ECF No. 107.

## II.  ANALYSIS

### A.  Applicable Law and Standard of Review

Pursuant to the Patent Act, 35 U.S.C. § 271(a), any person who "makes, uses, offers to sell, or sells any patented invention" without authorization within the United States, or imports the same into the United States, infringes that patent. Id.  Federal district courts have exclusive original subject matter jurisdiction over "any civil action arising under any Act of Congress relating to patents."  28 U.S.C. §§ 1331, 1338(a). Personal jurisdiction issues in patent infringement cases are reviewed under Federal Circuit law, as the determination of personal jurisdiction in a patent infringement case involves patent-specific questions and not merely procedural matters. See Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194, 1201 (Fed. Cir. 2003) (citations omitted).

[4]

In an action for patent infringement, "[t]o survive a motion to dismiss for lack of personal jurisdiction in the absence of jurisdictional discovery, plaintiffs need only make a prima facie showing of jurisdiction." Nuance Commc'ns, Inc. v. Abbyy Software House, 626 F.3d 1222, 1231 (Fed. Cir. 2010) (citation omitted).  In determining whether a plaintiff has made such a showing, the district court must "construe the pleadings and affidavits in the light most favorable to [the plaintiff]." Graphic Controls Corp. v. Utah Med. Prods., Inc., 149 F.3d 1382, 1383 n.1 (Fed. Cir. 1998).

Acushnet contends that this Court has jurisdiction over each of the Moving Defendants under the Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, § 3.  Pl.'s Opp'n re Nexen 10; Pl.'s Opp'n re Dixon 6-7; Pl.'s Opp'n re Rife 8. Additionally, as to Nexen only, Acushnet argues that jurisdiction is proper pursuant to Federal Rule of Civil Procedure 4(k)(2).  Pl.'s Opp'n re Nexen 10.

**B.   Jurisdiction Pursuant to the Massachusetts Long-Arm Statute**

"Personal jurisdiction over an out-of-state defendant is appropriate if the relevant state's long-arm statute permits the assertion of jurisdiction without violating federal due process." 3D Sys., Inc. v. Aarotech Labs., Inc., 160 F.3d 1373, 1376-77 (Fed. Cir. 1998).  The Massachusetts long-arm statute

[5]

permits "an assertion of jurisdiction over [an out-of-state defendant] to the limits allowed by the Constitution of the United States." "Automatic" Sprinkler Corp. of Am. v. Seneca Foods Corp., 361 Mass. 441, 424 (1972). Accordingly, the Court need only analyze the Due Process component.

Personal jurisdiction may take the form of either general or specific jurisdiction.[3] Trintec Indus., 395 F.3d at 1279. As Acushnet does not argue that this Court has general jurisdiction over the Moving Defendants, this memorandum focuses on whether there exists specific jurisdiction. The Federal Circuit applies a three-prong test in patent cases to determine whether a district court may exercise specific jurisdiction over an out-of-state defendant consistent with the federal Due Process Clause: "(1) whether the defendant purposefully directed its activities at residents of the forum, (2) whether the claim arises out of or relates to those activities, and (3) whether

---

[3] General jurisdiction exists where the defendant's actions or the particular circumstances are such that "it is proper to infer an intention to benefit from and thus an intention to submit to the laws of the forum state." J. McIntyre Mach., Ltd. v. Nicastro, 131 S.Ct. 2780, 2787 (2011). When a court has general jurisdiction over a defendant, it may adjudicate "both matters that originate within the [s]tate and those based on activities and events elsewhere." Id. (citation omitted). By contrast, specific jurisdiction is "a more limited form of submission to a [s]tate's authority for disputes that 'arise out of or are connected with the activities within the state.'" Id. (quoting Int'l Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement, 326 U.S. 310, 319 (1945)).

[6]

assertion of personal jurisdiction is reasonable and fair." <u>3D Sys.</u>, 160 F.3d at 1378 (citing <u>Akro Corp.</u> v. <u>Luker</u>, 45 F.3d 1541, 1545-1546 (Fed. Cir. 1995)).

### 1.   **Purposeful Availment**

Personal jurisdiction over an out-of-state defendant is proper only if "the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum, thus invoking the benefits and protections of its laws." <u>Synthes (U.S.A.)</u> v. <u>G.M. Dos Reis Jr. Ind. Com de Equip. Medico</u>, 563 F.3d 1285, 1296-97 (Fed. Cir. 2009) (quoting <u>Hanson</u> v. <u>Denckla</u>, 357 U.S. 235, 253 (1958)) (internal alterations omitted).  Such requirement guarantees that a defendant is only compelled to litigate in foreseeable forums and prevents it from "be[ing] haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." <u>Burger King Corp.</u> v. <u>Rudzewicz</u>, 471 U.S. 462, 475 (1985) (internal quotation marks and citations omitted).

Here, Acushnet argues that each of the Moving Defendants has purposefully availed itself of the laws and protections of Massachusetts by (among other things) operating interactive websites accessible in Massachusetts, selling its products to Massachusetts consumers, and placing its products in the stream of commerce with the knowledge that such products would likely end up in Massachusetts. <u>See generally</u> Pl.'s Opp'n re Nexen;

Pl.'s Opp'n re Dixon; Pl.'s Opp'n re Rife.  While the Court finds only some of these arguments persuasive, it concludes that the purposeful availment requirement is met as to each of the Moving Defendants.

The arguments surrounding the exercise of personal jurisdiction over the Moving Defendants in this case largely turn on this Court's interpretation of the Defendants' online presence and conduct.  The Supreme Court has yet to rule definitively on the nature and degree of online activities sufficient to render the exercise of personal jurisdiction over an out-of-state defendant constitutionally permissible.[4] Nonetheless, courts at the district and circuit level have reasoned that, in evaluating whether a defendant's online activity provides a basis for personal jurisdiction, "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124

---

[4] See Annie Soo Yeon Ahn, Note, Clarifying the Standards for Personal Jurisdiction in Light of Growing Transactions on the Internet: The Zippo Test and Pleading of Personal Jurisdiction, 99 Minn. L. Rev. 2325, 2326 (2015)("Currently, despite the vast and attractive Internet market, the Supreme Court has not ruled definitively [] which test should govern personal jurisdiction . . . in cases involving transactions on the Internet.") (citing Walden v. Fiore, 134 S. Ct. 1115, 1125 n.9 (2014) ("We leave questions about virtual contacts for another day")).

(W.D. Pa. 1997); see also Cybersell, Inc. v. Cybersell, Inc. 130
F.3d 414, 418-19 (9th Cir. 1997).

### a. Transactional Websites

On one end of the spectrum of online commercial activity
are transactional websites -- that is, websites that invite
users to "enter into contracts with residents of a foreign
jurisdiction that involve the knowing and repeated transmission
of computer files over the Internet[.]" Zippo, 952 F. Supp. at
1124. As these websites allow a defendant to directly conduct
business with residents of the forum state, operation of such a
site is generally sufficient to show purposeful availment, see
id., at least where there is evidence that the site was actually
used to do business with a party residing in the forum state,
see Trintec, 395 F.3d at 1282 (finding D.C. District Court's
exercise of personal jurisdiction improper where plaintiff
failed to establish that "any District residents have ever
actually used [the defendant's] website to transact business").

Dixon and Rife both operate transactional websites on which
the allegedly infringing products were available for sale. See
Decl. Krumholz, Ex. 17, ECF No. 82-17; Decl. Krumholz, Ex. 26,
ECF No. 82-26. In the case of Dixon, Acushnet's own purchase of
the allegedly infringing golf balls from Dixon's website, Decl.
Nathan Zieske Supp. Pl. Acushnet Co.'s Opp. Mots. Dismiss, Ex.
A, ECF No. 81-1, is evidence that Dixon purposefully availed

itself of the privilege of doing business in Massachusetts by transacting with purchasers in Massachusetts directly through its website.[5] As for Rife, however, Acushnet failed to show that any Massachusetts customers actually engaged in transactions on Rife's website.  Accordingly, the Court cannot conclude on the basis of Rife's website alone that Rife purposefully availed itself of the laws and protections of the Commonwealth.

### b.   Interactive Websites

A middle category of online commercial activity is made up of "interactive" websites, which allow "a user [to] exchange information with the host computer."  Zippo, 952 F. Supp. at 1124.  These types of websites are not merely "passive[,]" id., and indeed may facilitate subsequent transactions with the defendant business, but no sales are actually consummated through these sites.  The maintenance of such an interactive website may or may not suffice to establish purposeful availment, depending on "the level of interactivity and commercial nature of the exchange of information that occurs on the website."  Id.; cf. Trintec, 395 F.3d at 1281 (establishing the existence of "interactive features aimed at transacting

---

[5] Dixon's argument that the Court should not account for Acushnet's own purchase in evaluating personal jurisdiction fails here since, as Acushnet points out, "Acushnet purchased the Dixon Fire for testing and analysis as part of its usual business practice, and not with the intent of creating jurisdiction."  Pl.'s Opp'n re Dixon; see also infra note 7.

business" on the defendant's website is insufficient where "it is unclear how frequently those features are utilized").

Acushnet argues that each of the Moving Defendants operates at least one website with interactive features sufficient to render personal jurisdiction in this Court proper. See Pl.'s Opp'n re Nexen 11; Pl.'s Opp'n re Dixon 8-9; Pl.'s Opp'n re Rife 9-10. Having already concluded that Dixon satisfied the purposeful availment requirement by selling the allegedly infringing products through its website to at least one Massachusetts purchaser, this Court need only address the arguments with respect to Nexen and Rife.

Acushnet argues that Nexen's websites are "dynamic" in so far as they "provide contact information for would-be customers." Pl.'s Opp'n re Nexen 11. For example, nexencorp.co.kr includes a "Golf Ball" product page which features a link to an "e-catalog." Decl. Krumholz, Exs. 52-53, ECF Nos. 82-52, 82-53. Another Nexen site, saintnine.co.kr, includes a "Company" page with a "Contact" tab that lists the contact information for a sales department. Decl. Krumholz, Exs. 54, ECF No. 82-54. Neither of these websites invites an exchange of information, however; on the contrary, these are properly characterized as "passive" websites, as they "do[]

little more than make information available to those who are
interested in it[.]" Zippo, 952 F. Supp. at 1124.[6]

Acushnet also fails to show that Rife purposefully availed
itself of the laws and protections of the Commonwealth of
Massachusetts by operating an interactive website.  Although
Rife's website includes a search tool that allows users to look
up sales representatives and store locations (including in
Massachusetts), Decl. Krumholz, Ex. 27, ECF No. 82-27, Acushnet
did not supply any information regarding whether and how often
this tool is actually used by Massachusetts customers.  See
Trintec, 395 F.3d at 1281.

### c.   Doing Business Through Third Parties

Purposeful availment may also be inferred from the
utilization of a third-party website, such as when a third-party
website makes a defendant's products available for sale,
advertises a defendant's products, or directs online traffic to
a defendant's website.  See Trintec, 395 F.3d at 1281.  Under
these circumstances, however, personal jurisdiction is proper
only if the defendant has exercised some level of "control" over

---

[6] Nexen's only arguably "interactive" website is
nexentireusa.com, which features a "Dealer Locator" page on
which users may search for Nexen retailers by zip code.  See
Decl. Krumholz, Exs. 55-56, ECF Nos. 82-55, 82-56.  This website
bears no connection to the allegedly infringing conduct,
however, and therefore cannot serve as the basis for specific
jurisdiction in this case.  See infra part II(B)(2).

the contents of the third-party site, id., or alternatively if, by virtue of the third-party site, the defendant has "deliver[ed] its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum [s]tate." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 298 (1980). As to the latter theory, a plaintiff must establish that the defendant undertook some purposeful course of conduct that would reasonably result in its products winding up in the forum state, such as delivering its products to that state "through an established distribution channel[.]" Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1565 (Fed. Cir. 1994).

Acushnet argues that Nexen meets the purposeful availment requirement under these alternative theories because it made information about its allegedly infringing products available on an online "storefront" hosted by third-party ec21.com, Pl.'s Opp'n re Nexen 4-5, and further because it deliberately sold its products to Massachusetts purchasers online through an "authorized dealer," namely golfballs.com, id. at 13.  This Court is persuaded by Acushnet's argument that Nexen "established a nationwide channel of distribution in the United States, including Massachusetts" by making its allegedly infringing products available for sale on golfballs.com, an "authorized dealer" of Nexen products.  Pl.'s Opp'n re Nexen 13.

[13]

Taking as true Acushnet's allegation that golfballs.com is an

"authorized dealer" of Nexen's allegedly infringing golf balls

to consumers across the United States, including Massachusetts,

and considering Acushnet's claim that it purchased Nexen

products in Massachusetts,[7] see Decl. Zieske ¶ 15, there are

sufficient grounds on which to conclude that Nexen purposefully

availed itself of the privilege of doing business in

Massachusetts.  See Hilsinger Co. v. FBW Investments, No. 14-

14715, 2015 WL 2764604, at *15 (D. Mass. June 17, 2015) (Saylor,

J.) (finding defendant's maintenance of a partly interactive

website was sufficient to satisfy purposeful availment prong "in

_____

[7] Nexen argues that Acushnet's own purchase of the products
at issue was an attempt to "manufactur[e]" jurisdiction and thus
does not support the exercise of personal jurisdiction.  Joint
Reply 7.  Nexen is correct that a plaintiff's own purchase of a
defendant's product "for the sole purpose of providing a basis
for personal jurisdiction" has been held by other courts to be
insufficient.  Ricoh Co., Ltd. v. Asutek Computer, Inc., 481
F.Supp.2d 954, 959 (W.D. Wisc. 2007) (noting that "such a forced
and artificial exercise cannot provide the basis for personal
jurisdiction"); see also Millennium Enters., Inc. v. Millennium
Music, LP, 33 F. Supp. 2d 907, 911 (D. Or. 1999) (sale of
defendant's product to an acquaintance of plaintiff's counsel,
at counsel's direction in order "to manufacturer a contact with
th[e] forum sufficient to establish personal jurisdiction" did
not constitute purposeful availment).  Here, though, it cannot
be said that Acushnet purchased the product at issue solely to
ensure that this Court could exercise personal jurisdiction over
Nexen.  On the contrary, Acushnet has a routine of buying golf
balls on the open market for competitive and intellectual
property analysis and had purchased Nexen's allegedly infringing
product on several occasions before bringing suit against Nexen.
Decl. Zieske ¶¶ 4, 7, 15.

light of [defendant's] sales into Massachusetts through national retailers," among other factors).[8]

As for Rife, Acushnet failed to show that Rife exercised control over the contents of the third-party websites on which its allegedly infringing products were listed for sale, but successfully established that Rife purposefully availed itself of the privilege of doing business in Massachusetts under the stream-of-commerce theory. Rife claims that it neither formed contractual relationships with "brick and mortar" retailers in Massachusetts nor sold the product at issue to such a retailer, Decl. Zylstra I ¶¶ 5-9, but its own website contradicts these assertions, as it shows a number of dealers or retailers (described as "carr[ying] Rife Products") located in Massachusetts, Decl. Krumholz, Ex. 27.[10]

---

[8] Because this Court concludes that Acushnet has made a prima facie showing that Nexen purposefully availed itself of the laws of Massachusetts under the stream-of-commerce theory, we need not address the question whether Nexen exerted the requisite control over the ec21.com website. Nonetheless, we note that although Nexen apparently acquired a "membership" in the ec.21.com website on November 05, 2008, Acushnet's own exhibits indicate that such membership remained "unverified." Decl. Krumholz, Ex. 62, ECF No. 82-62.

[10] That Acushnet did not establish that Rife made a sale to a Massachusetts customer through one of these outlets does not defeat purposeful availment under the stream-of-commerce theory. Although the court in Trintec apparently required an actual sale in the forum state, 395 F.3d at 1282, the claimed distribution channel was a website which was accessible generally to the public, id. at 1281, rather than a retailer that particularly targeted residents of the forum state. In Rife's case, the

### 2. Connection to Challenged Conduct

In addition to showing that the out-of-state defendants had contacts with Massachusetts sufficient to amount to purposeful availment of this state's laws and protections, Acushnet must show that its claims here arise out of those contacts. See 3D Sys., 160 F.3d at 1378. Here, this requirement is met in the case of each of the Moving Defendants. Specifically, the Moving Defendants' contacts with Massachusetts involve activities relating to the sale of the allegedly infringing products, whether through the Defendants' own websites (Dixon) or by placing them in the stream of commerce (Nexen and Rife).

### 3. Fairness

The final element of the constitutional due process test for specific jurisdiction asks whether the exercise of jurisdiction would violate "fair play and substantial justice". See LSI Indus. Inc. v. Hubbell Lighting, Inc., 232 F.3d 1369, 1375 (Fed. Cir. 2000). The relevant inquiry involves the consideration of five factors:

> (1) the burden on the defendant, (2) the interests of
> the forum state, (3) the plaintiff's interest in
> obtaining relief, (4) the interstate judicial system's

---

dealers and retailers which constitute the distribution channel are actually located in Massachusetts. Acushnet has thus established that Rife has purposefully availed itself of the privilege of doing business in Massachusetts under the stream of commerce theory by relying on the existence of "brick-and-mortar" dealer and retailer stores located in Massachusetts, the identity of which are recognized on Rife's own webpage.

interest in obtaining the most efficient resolution of
controversies, and (5) the shared interest of the
several states in furthering fundamental substantive
social policies.

Elecs. For Imaging, Inc. v. Coyle, 340 F.3d 1344, 1352 (Fed.

Cir. 2003) (citation omitted); see also World-Wide Volkswagen,

444 U.S. at 292.   The defendant bears the burden of proof on

this question.   3D Sys., Inc., 160 F.3d at 1379 (observing that

"the burden [is] on the party over whom jurisdiction is sought

to prove that jurisdiction would be constitutionally

unreasonable."); Burger King, 471 U.S. at 476 (noting that it is

"presumptively not unreasonable" to compel a defendant to

litigate in a forum once it has been established that the

defendant purposefully availed itself of the laws of that forum

state).

   None of the Moving Defendants here has advanced a

convincing argument as to why it would be unconstitutionally

unfair to subject it to jurisdiction in this forum,

notwithstanding its contacts with Massachusetts.[11]   Accordingly,

this Court concludes that it may exercise personal jurisdiction

---

[11] Indeed, each Defendant apparently argues only that the
exercise of general jurisdiction would be unfair under these
circumstances.   See Def. Nexen Corp.'s Mem. Supp. Mot. Dismiss
Lack Personal Juris. 5-6, ECF No. 51; Def. Dixon Golf's Mem.
Supp. Mot. Dismiss Lack Personal Juris. 6, ECF No. 55; Def. Rife
Golf's Mem. Supp. Mot. Dismiss Lack Personal Juris. 5-6, ECF No.
53.

over the Moving Defendants consistent with the fairness
requirement of the Due Process Clause.

**B.   Jurisdiction Pursuant to Rule 4(k)(2)**

As to Nexen only, Acushnet separately argued that this
Court may exercise jurisdiction under Federal Rule of Civil
Procedure ("Rule") 4(k)(2).  Pl.'s Opp'n re Nexen 10.   Rule
4(k)(2), the so-called "federal long-arm statute[,]" Synthes,
563 F.3d at 1296, allows a district court to exercise personal
jurisdiction over a foreign defendant when: "(1) the plaintiff's
claim arises under federal law, (2) the defendant is not subject
to personal jurisdiction in any state's courts of general
jurisdiction, and (3) the exercise of jurisdiction comports with
due process."  Id. at 1293-94 (citing Fed. R. Civ. P. 4(k)(2)).
This rule serves to ensure that a foreign defendant who has
substantial contacts with the United States as a whole, but
insufficient contacts with any one state, cannot "escape
jurisdiction."  Touchcom, Inc. v. Bereskin & Parr, 574 F.3d
1403, 1414 (Fed. Cir. 2009) ("Rule 4(k)(2) was adopted to ensure
that federal claims will have a U.S. forum if sufficient
national contacts exist").  As the Court has already concluded
that the Moving Defendants had sufficient contacts with
Massachusetts to give rise to jurisdiction under the
Massachusetts long-arm statute, Rule 4(k)(2) is inapposite here.

## III.  CONCLUSION

For the reasons set forth above, the Court DENIED the Moving Defendants' motions to dismiss for lack of personal jurisdiction.  ECF No. 50, ECF No. 52, and ECF No. 54.

**SO ORDERED.**

WILLIAM G. YOUNG
DISTRICT JUDGE